Please the court. Mark Friedman on behalf of the appellant, um, D'Angelo Turner. Habeas corpus is relief is at its core an equitable remedy. In appropriate cases, principles of committee and finality must yield the imperative corrector of fundamental unjust incarceration. We submit your honor that this is one of those cases to find that Mr Freeman in this case, I think your client's going to have to split through the Schlepp versus D'Angelo actual innocence gateway. The, with regard to a procedural default, that's correct, your honor. He did procedurally default, did he not? Well, we're going to argue that that's not quite the case, but that is in fact an alternative that we're presenting to this court. Well, couldn't you argue, couldn't you argue aside from getting into the Schlepp analysis that there was ineffective assistance of the appellate counsel in the, in the Oregon courts? We are arguing. And that was the cause for the procedural default, but of course that issue has yet to be exhausted. That's. But it struck me that if in fact there is a procedural default, which there appears to be, that that was due to the ineffective assistance of counsel. Well, one thing we would note, your honor, is that with regard to the appellate counsel, we submit that actually there was, this issue was federalized. It wasn't perhaps, it wasn't argued in full, but specifically with regard to the severance. There is reference in the initial appellate brief with regard. In the Oregon Court of Appeals, and with respect to one issue, as I understand it, the issue was, was whether or not he was deprived of his right to call witnesses. Correct. To people to whom his co-defendant had confessed committing the murder. And I was called to the Oregon Appeals Court in, in the manner in which it should have been with an allusion to the due process clause. But is that in the, in the application for leave to appeal to the Oregon Supreme Court? It. I mean, I, I, maybe I missed it, but when I read it, it looked to me like he was just arguing the overall inappropriateness of, of, of, of a joint trial. When there was a specific, I'm not suggesting now that it necessarily would have warranted reversal, but there was a specific constitutional issue with respect to the judge's refusal to allow him to call a witness to testify that his co-defendant had confessed to witnesses. Right. And, and that's correct, that with regard to the, the appellate record in this case, it is not, it is insufficient with regard to dealing with the, the U.S. constitutional issue. And, I mean, aren't we bound by Baldwin v. Reese on this issue? If, if the only mention is in the appellate brief in the Oregon Appellate Court, we got reversed in Baldwin v. Reese on this very issue, did we not, when we granted relief in a similar situation? We would submit that this, this is a case, Your Honor, where there is, in fact, a constitutional basis. We're, you know, we would look here with regard, particularly to this Court's ruling in Zaffaro. And, again, we, we understand, we know that counsel is going to argue that Ninth Circuit law is, is not perhaps adequate, but it does meet the test that this Court set out there. You're not answering my question. Help me, help me distinguish Baldwin v. Reese, because I think that that's clearly controlling on the default issue, unless you can explain to me how I get around it. There is no, there is no response. So it is procedurally default? Again, specifically with regard to that issue, again, we, we'd still submit that when you get to the, the, the Schlepp issue, that there is this still gateway, there's this gateway innocence. So now we are. Yes. The question I asked you earlier, which is he's got to show actual innocence to get through the case. Yes. And we, we would submit that he has. Let me just back up for a moment, because I think this issue with regard to the evident, the need for the evidentiary hearing come together. One of the significant discoveries that was made in this case when it reached this level of habeas was that the original trial counsel had been effectively disbarred in this. He was, he filed a Form V resignation. And the reason he was, he had to resign was he had lied. He had lied on billing records. In another case. In another case, yes. In fact, in a series of many, many other cases. Was this before or after he tried to? This is after this case. And the reason why that's significant is that wasn't known at the time that he had petitioned for post-conviction relief. In fact, this attorney was called and this attorney testified, and ultimately the, the court hearing post-conviction relied upon his testimony in determining specifically that there were good strategic reasons as to why the defendant had not testified, Mr. Turner had not testified, that there were good reasons why these witnesses hadn't been called. And what we submit, Your Honors, is that this fundamental dishonesty goes to the core of whether or not that testimony should have been believed at the PCR level. And that's what we, we had asked the district court to, to look at these records, because what we were able to discern and what the reason for the evidentiary hearing was that there were significant variations between the. I mean, that's just classic impeachment. So, so in order to get where you want to go, to prevail, you would have to show that the attorney's testimony is inherently unbelievable because he should have been thoroughly discredited with his conduct in an unrelated case involving the preparation of vouchers for indigent defense, right? None of which speaks directly to the actual innocence gateway. You have to get through to get there. Well, if I can, if I may, Your Honors, we are, we can establish that he lied, that he is not to be believed. In this case, what- On what issue, on what issue did he lie and is not to be believed? In, with regard to the billing records, that he was disbarred. That's why he had to, that's why he was disbarred. I know, but what, what does that impeach? With, in this case specifically, that same problem with discrepancy in his billing records exists in this case. So, so what? Because it shows, he claimed, he claimed contact with witnesses that do not appear in the records from the investigator that worked this case. He claimed contact with the defendant that did not appear, that don't appear in the other- And so what? So- I mean, I'm not saying it's good that he did that, but when I say so what, I mean, how does that, how does that get you to, to relief here? It gets, what it gets us is the fact that there is a fundamental, that he's lying in terms of specifically, our client wanted, Mr. Turner, wanted to testify in this case. The fact that he didn't testify, at least as far as the piece, the post-conviction court is concerned, was based upon there being some strategic decision. There's an affidavit that was submitted as part of the habeas case in which the Mr. Turner states- Testify on post-conviction relief? Because he testified at his trial. No, he did not. Oh, just Simmons testified. Just Simmons, that's right. That's what, that's again, back to that severance issue, only Simmons testified. There, what, it has been Mr. Turner's position and it's stated in Mr. Turner's affidavit to the district court that he had wanted to testify, that he had wanted to testify in his case, that his attorney did not let him. And again, normally this is considered a strategic issue between client and attorney. What we submit here is that there is now evidence which would suggest that it was not a strategic decision. This was- This seems awfully far away. I look at your statement of issues presented on appeal, and I don't hear anything about right to defend himself or right to testify being talked about. Those aren't the issues that are presented to us and have been presented to the district court. That's part, that's included as part of the reasons for the evidentiary, the request for the evidentiary hearing in this case. But you've got to connect it up with more than the possibility. I mean, the problem here is that you've got a client who's been convicted, who's been through the process once, and you don't get a redo just because, gee, this lawyer isn't trustworthy and maybe we're going to find something. I mean, we need something more substantial than that to make us believe the evidentiary hearing is going to produce anything. And my related concern to that is you don't get the evidentiary hearing in order to conduct a fishing expedition in the hope that that's the evidence that's going to come out. At this point in the case, you've got to present to us evidence from which we can then conclude that it is more likely than not that if this evidence were before the jury, it is the reasonable likelihood that they would not return a verdict of guilt. And I think that's how I understand how the actual innocence gateway works. Right. And what we submit, Your Honor, is that specifically what we've got is the following pieces of evidence. One, not only do we have a new witness that was located and we have a statement from that witness, there were, in fact, some earlier witnesses that were available at the time that PCR was occurring. So we have sort of this compound in terms of witnesses that will actually testify that the other defendant had admitted to this crime and not Mr. Turner. With regard to the issue with regard to the these false billings, maybe if we can make it a little bit clearer here, is that what it goes to is the question of why these witnesses were not permitted to testify at the original trial. These were critical witnesses that bore upon Mr. Simmons's background. But didn't he offer at least two witnesses to testify to that? He wasn't able, he wasn't permitted to offer witnesses that testify as to Mr. Simmons's violence, and specifically violence towards women. That was because the other, he tried, right, in the Multnomah County Circuit Court, so it said, no, I'm not going to allow that evidence. Right, and there's no offer of proof either. No. So we don't know what's there. There was an objection raised by the other defendant. The court ruled that it wasn't going to be admissible. And a good lawyer at that point would have said, may I make an offer of proof? Right. And if the defendant said no, then you just file it, and here it is. It didn't happen, Your Honor. It didn't happen. Again, what we're trying to argue here is that we have an attorney, we have an extreme example of ineffective assistance for counsel where, in fact, it goes to the point at which we have somebody who not only has failed to do the job for the client, but in fact perhaps is acting falsely. And we've got reason to – we've got evidence of that now that shows that he's acting falsely. And was that evidence brought to the attention of the Oregon court? That evidence wasn't available. The falsehood was not available at that point. It was brought to the attention of the district court, but not the Oregon court. Well, why shouldn't you go back to the Oregon court? I mean, is this exhaustive? I mean, do you have – I would assume that newly discovered evidence – I mean, I'm not an expert on Oregon procedure, but I would assume that if you find newly discovered evidence that relates to a proceeding, that you can go back to that, to the Oregon courts with that argument. Why should it be addressed for the first time in a federal district court? Well, at this point, the timing in terms of Mr. Turner filing his habeas was running – and so if habeas was filed, it was only at the point that habeas had been filed that this new evidence was discovered. I know, but you could – there's a procedure where you could ask to have the petition stayed so that you don't lose out on the statute of limitations ground, so you can go back and exhaust. I don't have the answer for that. Thank you. Thank you. Good morning. May it please the Court, Denis Vannier, appearing for Appellee. Petitioner's claim, the root of petitioner's claim on appeal is it's a severance claim. It's the trial court's failure to sever his trial from Simmons' trial. And that claim fails for two reasons. First, it's procedurally defaulted, and petitioner doesn't qualify for the actual innocence gateway through procedural default. If he – assuming it's possible, but isn't there an ineffective assistance of appellate counsel argument here that could excuse the default, provided it was raised in the state courts? No, Your Honor, and there are really two reasons for that. And could you – when I ask that, could you focus on the exclusion of two witnesses who we wanted to call to testify that Simmons had confessed to them that he committed the murder? I think I understand the question. But no, there is no ineffective assistance of counsel, and again, for two reasons. I mean, the simplest reason, I guess, is petitioner does not even raise a claim of ineffective assistance of appellate counsel. He couldn't hear because he didn't – I mean, that would be a claim that would have to be exhausted in the state courts. Well, as a practical matter, it was not ineffective assistance because we simply have nothing in this case that shows that – Well, why didn't he raise a federal constitutional question before the Argonne Supreme Court? I mean, this whole thing about talking about it as a severance issue, there was a clear – he had a right to call witnesses in his defense. He was deprived of that. He put it in due process terms in the Argonne Court. Why shouldn't he have done the same thing before the Argonne Supreme Court when he – Because that claim was not meritorious. I mean, it is axiomatic that appellate representation involves winnowing down claims for appeal. In this case, counsel made the strategic decision that raising a state law severance claim was the way to go in this case. And there was – I have to admit, I'm puzzled because I've seen this from Oregon where the quality of the bar tends to be high, but I've seen far more often than any other state in our circuit where the tendency is to cite state law cases, not make mention of federal cases to the same effect, and here we are several years later sitting there trying to figure out can you even get into federal court when all you need to do is cite a few federal cases along the way? Isn't there at least a possible argument there that it's so simple to cite a federal case that you should do it? You know, no case has so held that an appellate attorney is required to cite federal law. As we explain in our brief, severance claim is not a state law. Well, he's basically deprived him of his right to – what he's done is by failing to raise a federal constitutional claim, he's deprived him of his right to have review of a federal constitutional claim that he was precluded from calling witnesses who gave – who could give exculpatory evidence. But, Your Honor, the claim in this case is not a claim the trial was ineffective for failure to call witnesses. The claim is that Petitioner was prejudiced by the severance of his trial with Simmons. Well, but that's the way it was packaged, but one of the reasons he was prejudiced was because, you know, the argument was made that he was not permitted to call two witnesses, and it's obvious that the judge was – if you look at what the judge was doing at trial, she was trying to balance the – protect the rights of both defendants. As a factual matter, that isn't accurate, Your Honor, because the reason Petitioner was prevented from calling those particular witnesses was because Simmons' confessions, alleged confessions to those witnesses, were hearsay. And so even if the trials had been separate, they still would have been inadmissible. I agree with that. They were hearsay as to whom? Hearsay as to Simmons. Well, but that's sort of omission against interest. Why wouldn't – I mean, you've got somebody who comes in and says, Jones told me Jones did it. Well, they would have been admissible as impeachment against Simmons. No, assume you've got a separate trial. I mean, I think that's why severance raises this. Suppose you have a separate trial, then there's no inhibition against dumping on Simmons. Well, but there is, because Simmons is not a party opponent if offered by the State under Oregon law. Well, I don't know. Oregon evidence law may be unique, but jurisdictions I'm familiar with, admission against penal interest is going to come in whether he's a party or not. And it could have been perhaps admitted as an admission against penal interest. But, again, what I really want to emphasize in this case is that the claim that Petitioner addresses in this case is his severance claim. And that claim is procedurally defaulted because it was not raised in the Oregon Supreme Court. I know, but when I ask you, couldn't – isn't there a basis for him to go back and argue that he was an ineffective – is it too late for him to bring a collateral attack in the Oregon courts based on ineffective assistance of appellate counsel? It might be. It is unclear. Oregon does allow for successive petitions for post-condition relief if the Petitioner can show – it's very similar to federal law – a factual basis that could not have been discovered previously or any reason why the claim could not have been brought previously in the original petition for post-conviction. But in this case, really, what the root of the claim is, is a severance issue. And severance is decided at the outset of a criminal prosecution. And Petitioner, in order to prevail in this case, even assuming that this Court could reach the merits of this procedurally defaulted claim, Petitioner has to show that the Oregon Court of Appeals applied U.S. Supreme Court case law in an objectively unreasonable manner. And in this case, Petitioner does not show that. He does not show that what the Oregon Court of Appeals did is an unreasonable application of Zafiro or Richardson or Grisham. Well, but Zafiro, how about the notion that its severance would be inappropriate and the failure to sever could result in a reversal if it ultimately operated to deprive the defendant of a specific constitutional right? That is correct, Your Honor. And the argument would be that the specific constitutional right in this case was his inability to call witnesses that showed that his accomplice committed the murder. Well, Your Honor, again, that does not appear from the record. I mean, Petitioner, what happened is Petitioner at the onset of trial offered or suggested that he wanted to call these witnesses. The Court said, I will not allow these witnesses in the case in chief. There was never any ruling for impeachment purposes. There was never one has to remember these rulings were made before it was even clear that Simmons was going to testify. The original idea, the Court was faced with a prudent problem originally. The idea was Simmons was not going to testify. Once Simmons testified, Petitioner could have re-offered this testimony, could have called these witnesses for impeachment. We have not. Well, for this particular issue, why did it matter whether Simmons testified or not? I mean, it was an admission of his that he committed the murder. And why couldn't he, why couldn't the Petitioner offer it? Well, because Petitioner, you know, once Simmons testified, Petitioner had the opportunity to cross-examine Simmons about these confessions. Then they could have come in to impeach Simmons. Well, why should he do that? Why does he, why he wants to offer the confession? You could cross-examine him. Well, like I said, the Court was trying at that point to balance the prudent problems. And the, and Simmons's allegation. There was no prudent problem here. I don't see it. Two people want to say that the co-defendant committed the murder, admitted to having committed the murder. I don't see any prudent problem here. There's no prudent problem. In terms of Simmons, it was an admission by him that he committed a murder. It was clearly he had no standing to object to it on hearsay grounds. But, Your Honor, in this case, we don't have any offer of proof as to what these witnesses would have testified. And we actually, what we have is a finding by the post-conviction court. You mean he didn't say, he didn't say at the time that he was, he wanted to call witnesses to testify that Simmons admitted it? He did say that. But the post-conviction. Well, what more offer of proof do you need? But the post-conviction court found as fact that, in fact, these witnesses, that there were valid strategic reasons not to call these witnesses. As to Shanta Turner, the post-conviction court found that she was an unreliable witness and that a lot of her testimony would have been harmful to the Petitioner. And that is, in the record, that's a specific finding, that is presumptively reasonable unless Petitioner can rebut it. And he hasn't in this case. As to the second witness that would have testified at trial, that Petitioner wanted to testify, the post-conviction court found as fact that that witness's testimony would not have been helpful to Petitioner, would not have been, would not have made a difference. And so, again, Petitioner has to — essentially, the court is bound by those findings of fact unless Petitioner can rebut them. And there is nothing to rebut those findings of fact in this case. And so they're presumptively reasonable. And so what we're left with is Petitioner's severance claim that's procedurally defaulted. Petitioner doesn't satisfy the threshold for the actual innocence gateway in this case because Petitioner was convicted essentially under an aid and abet theory. And so he would have to be entitled to the gateway to point to evidence that would show no reasonable juror could have found he aided and abetted in the murder, which was not shown here. And then even if he were entitled to the gateway, he hasn't shown the type of prejudice that would make it so that the court of appeals application of Zaffiro was an objectively unreasonable application of Zaffiro. So for these three reasons, because Petitioner's claim is procedurally defaulted, because he's not entitled to the actual innocence gateway, because he was convicted on an aid and abet theory, and because he doesn't show that the Oregon court of appeals applied Zaffiro in an objectively unreasonable manner in this case, Petitioner is not entitled to relief, and this court should affirm the judgment of the district court. Thank you very much, counsel. Thank you. Any time for rebuttal here? Just ever so briefly. I just want to clear up one point. Mr. Turner was not convicted on aid and abet theory. He was convicted of intentional murder. The co-defendant, Mr. Simmons, was convicted of manslaughter in the first degree. Significant difference, also significant difference in the amount of time that each of them was sentenced to. So I would submit, Your Honor, that the ---- I don't know Oregon law, but there's nothing inconsistent. The crime is intentional murder, but you could be as an aid and abet or you're guilty as a principal. Does that answer his argument? Again, we would submit that if counsel is suggesting that it doesn't matter whether or not Mr. Turner was, in fact, the principal in this case, then we would suggest that it does, because the jury, in fact, made a determination, it would appear, that Mr. Turner was the principal and that perhaps Mr. Simmons was not. But then he's got to confront the evidence that he admitted to the rape and he admitted to moving the body and all the things that he told the homicide detective that. Of course. We understand that. The fact is that those issues in terms of the statements that he made to the police and, in fact, I think the evidence was that he had made three different statements to the police over a period of time, those statements were made in his ---- in Mr. Turner's mind as an attempt to work with the police, to cooperate with the police. He thought, in fact, that when he admitted to the rape that somehow this was going to reduce his culpability in terms of them looking at him as the ---- as a murder suspect in the case. And he thought just by saying any of these things it would get him through. These are things that, unfortunately, never got flushed out because he never had the  Thanks. Thank you very much. The case just argued is submitted. The next case, Hindman v. Lampert, is submitted on the briefs. And the last case for argument on the calendar is the United States of America v. James Salmon. Thank you.
judges: Tallman, Clifton, Korman